IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 MAR 16 PM 3:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

CYLA ANDERSON, a minor,
by and through her next friend
and parent, CONSTANCE
ANDERSON,

    Plaintiffs,

vs.

CASE NO. CV-98-J-1791-S

BIRMINGHAM BOARD OF
EDUCATION,

    Defendant.

ENTERED
MAR 16 1999

## MEMORANDUM OPINION

Currently pending before the court is the defendant Birmingham Board of Education's motion for summary judgment or judgment on the administrative record (doc. 8), filed October 30, 1999, to which the plaintiff has not responded.[1]

### I. Procedural History

Plaintiff commenced this action on July 10, 1998 by filing a complaint in this court pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. The plaintiff requested in her complaint that this court find the decision of the due process hearing officer, dated June 3, 1998, to be null and void, to declare that the minor child has been deprived of a free appropriate public education, and to award attorney fees. Complaint of plaintiffs at 5. The defendant filed a counterclaim requesting that this court reverse that portion of the hearing officer's decision stating that the defendant violated the IDEA by

---

[1]The court entered a briefing schedule on January 21, 1999, by which a response to the defendants' motions was due on or before February 4, 1999. No response or opposition has been filed to date.



failing to provide the plaintiff with a copy of the testing protocols used to determine if the minor plaintiff was eligible for special education services. Defendant's answer and counterclaim at 4-6. Neither party has requested oral argument. Therefore, this court decides this case on the pleadings filed by the parties, the brief of the defendant and the administrative record filed by the defendant.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The moving party satisfies its burden by showing an absence of evidence to support an essential element of the nonmoving party's case. *Id.* at 317. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). The non-movant must "demonstrate that there is indeed a

material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. Factual Background

In the light most favorable to the non-moving party, the court draws the following facts from the record currently before the court: The child was born on June 21, 1990 and started kindergarten at the beginning of the 1995-1996 school year. After the plaintiff filed a request for a due process hearing on May 20, 1997, the child was evaluated, deemed eligible for special education and an individualized education program ("IEP") meeting was held on February 6, 1998.[2] Hearing transcript at 15, 23, petitioner's exhibit 1.

After the May, 20, 1997 due process hearing request, on July 15, 1997, the defendant offered to conduct an education evaluation of the child and to convene the Multi-Disciplinary Eligibility Determination Committee to determine the minor plaintiff's eligibility for special education services. Hearing transcript at 758. While Alice Daniels, a guidance counselor for defendant, testified that she sent forms home in September, 1997 for the plaintiff to sign to conduct evaluations, she stated that the defendant did not receive a signed form in response. Hearing transcript at 564. A second form was mailed to the plaintiff parent in November, who then signed and returned to the defendant the form from September, 1997.

The two issues brought before the hearing officer were:

1. Whether the defendant failed to identify that the minor child earlier than it did concerning her eligibility for special education services;

---

[2]The hearing officer notes that the first two continuance requests were made by counsel for plaintiff, the next two by defendant, and then two more were made as mutual requests by both parties. Hearing transcript at 23-24.

3

2. Was the defendant's failure to provide the plaintiffs with a copy of the test protocol used in testing the minor child a due process violation.

Hearing transcript at 10, 12, 39.

After conducting a multi-day hearing, the hearing officer made detailed findings of fact, which the plaintiff apparently does not contest. The hearing officer concluded that:

> [T]here was insufficient information in possession of school officials which would have required them to have conducted an evaluation of Cyla A. prior to the request for due process hearing on May 20, 1997. The fact that a child has been prescribed Ritalin does not mandate that a school system evaluate the child for an educational disability. Moreover, neither the child's behavior problems nor her classroom performance would have invoked concern that she might be a student who required special education services. Her academic performance was satisfactory. Her disciplinary difficulties were not significant. Certainly, her behavior did not demonstrate that she qualified for services as an emotionally conflicted individual.

Due process decision of June 3, 1998 at 16. The hearing officers specific rulings included that the defendant was directed to provide a copy of the sub-test scales or protocol of the Woodcock-Johnson achievement test to the mother of the child subject to a protective order and that the defendant did not fail to evaluate the student for special education services in a timely manner. Due process decision at 18.

### A. Determination of eligibility

The evidence before the hearing officer showed that the child made academic progress during her kindergarten year. *See e.g.* defendant doc. 12, 13, 17, 22, hearing transcript at 183-184, 743, 744. The plaintiff testified however, that the child's behavior, not her grades, should have prompted a referral during the 1995-1996 school year. Hearing transcript at

743. The plaintiff took the child to a psychiatrist in approximately February, 1996, who determined that the child suffered from attention deficit hyperactivity disorder (ADHD). Due process decision at 5. However, the plaintiff did not provide the school with this information. Hearing transcript at 759-760. The only indication on file with the defendant concerning the child was her form for her Ritalin dosage, dated April 19, 1996, while the child was enrolled in kindergarten. Hearing transcript at 92.

Although the child received repeatedly low grades in conduct, her teacher testified that she was by no means the most disruptive child in the class. Hearing transcript at 159, 164. Dr. Spann testified at hearing that grades in "conduct" were not relied upon for learning disability determinations because the conduct grade could be representative of numerous different things. Hearing transcript at 75-76. Dr. Spann further testified that most children with ADHD are not eligible for any type of special education. Hearing transcript at 87, 106.

Ms. Daniels testified that none of the behaviors mentioned in a February, 1996 letter would indicate to her a child who was in need of EC ("emotionally conflicted") services. Hearing transcript at 538, petitioner's exhibit 4 (defendant's doc. 16). She also stated that she did not observe any behaviors in the minor plaintiff during her kindergarten year which would suggest a child eligible for EC services. Hearing transcript at 540. Likewise, none of the indicative behaviors were reported to her.[3] Hearing transcript at 540.

---

[3]More specifically, she testified that excessive talking, hitting other children and not keeping her hands to herself are not unusual behaviors for a kindergarten student. Hearing transcript at 541.

5

After the hearing officer ordered the plaintiff to consent to the defendant conducting an evaluation of the child, the plaintiff did so on November 24, 1997. Defendant doc. No. R00096. Based on the assessment subsequently conducted in December, 1997, the child was determined eligible for special education services in the areas of written expression and mathematical reasoning on January 8, 1998 by the Multidisciplinary Determination Committee. Defendant doc. 102-112, 116-119. Hearing transcript at 71.

As stated above, the defendant concluded that the minor plaintiff was learning disabled due to a discrepancy between her ability and her achievement. Hearing transcript at 71. However, Dr. Spann also testified that the scores from the testing did not show any significant attention deficit. Hearing transcript at 71-72. Dr. Spann also stated that the child's school record did not show any severe or unusual behavior problems. Hearing transcript at 73.

The IEP Committee met on February 6, 1998, with the plaintiff and her attorney present. At that time, the child's entire file was available. Hearing transcript at 469-471.

### B. Production of testing protocol

On January 30, 1998, Dr. Jeannine Spann responded by letter to the plaintiff's request for reports or documents used in determining the child's eligibility. Hearing transcript at 45-47. Dr. Spann testified that while the plaintiff may review this information, the defendant does not send copies of this information pursuant to a document request. Hearing transcript at 63. She testified that while the defendant gladly will review the answers with a parent,

that defendant has been informed "by the people who own the copyright" that they may only send copies of the protocols themselves to a person qualified to give the test. Hearing transcript at 63-64.

The plaintiff testified that she was sent copies of all the test scores. She stated that "I got a big package of material with all stuff that you all have everywhere here now." Hearing transcript at 780-781.

## IV. DISCUSSION

At this point, the defendant has complied with the IDEA. The plaintiff does not allege in her complaint that the child does not belong in the learning disabled program, does not allege that the IEP was conducted incorrectly, does not allege that the evaluation was conducted improperly, and does not allege that the child has suffered any harm from not being evaluated until the middle of her first grade year. The sole complaint of the plaintiff regarding the placement of the child is that it should have been done sooner.

The school is required to identify and evaluate students suspected of having a learning disability. Alabama Administrative Code, 290-080-090-.04. The unrefuted testimony from the hearing was that the child's teachers did not find her behavior to be severe to the point that any evaluation was warranted or even considered. The United States Supreme Court has stated that access to a free appropriate public education includes the requirement that the education to which access is provided must be sufficient to confer some education benefit upon the child. *Board of Education of the Hendrick Hudson School District v. Rowley*, 458

U.S. 176, 200, 102 S.Ct.3034, 3048 (1982).[4] Clearly, the child is receiving benefits from her education. Even the plaintiff stated at the hearing that the child is achieving academically. The Court stated that "the IEP ... should be ... reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 203-204, 102 S.Ct. at 3049.

Given the plaintiff's allegations, even if this court found in favor of the plaintiff, no relief can feasiblely be fashioned by this court to provide a remedy for this complaint. Clearly, the plaintiff does not request that the child be removed from the program, have another evaluation, be provided different services or any of the other feasible remedies. Plaintiff requests this court to declare that the defendant failed to provide the child "with a free appropriate public education as mandated by the Individuals with Disabilities Education Act by failing to develop and implement an appropriate behavior management plan and/or appropriate remedial education plan consistent with her accepted exceptionality of learning disabled as required by federal and state laws".[5] Complaint at 5. However, the plaintiff, as the party challenging the administrative decision, bear the burden of proof in district court. *See Clyde K v. Puyallup School District, No. 3,* 35 F.3d 1396, 1399 (9th Cir.1994); *Angevine v. Smith*, 959 F.2d 292, 295 (D.C.Cir.1992).

---

[4] See also 34 C.F.R. § 300.4 defining a "free appropriate education" under the IDEA as "special education and related services which ... are provided in conformity with an individualized education program."

[5] Plaintiffs also do not allege that the minor plaintiff has not advanced adequately or that she is now in need of remedial education.

8

The plaintiff has not pointed to any harm that has resulted from the defendant failing to evaluate the child sooner, or from failing to provide the parent with copies of testing protocol. *See e.g. Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 996 (11th Cir.1998). As such, this court cannot find that the decision of the hearing officer regarding the defendant's failure to identify the child as in need of special education services sooner, is incorrect.

A copy of the reports generated by the testing given to the child in December, 1997 was provided to the plaintiff in January, 1998. Hearing transcript 779-781. The plaintiff admitted at the hearing that she was never told that she couldn't see the actual tests and was never refused access to any records. Hearing transcript at 780, 783. The plaintiff also does not allege any injury from not being provided copies of the actual tests. While parents clearly have the right to review all educational records with respect to the identification, evaluation, and educational placement of their child, this court can find no basis for the hearing officer's decision that the parent is entitled to copies of test protocols, which are copyrighted materials. *See* 34 C.F.R.§ 300.502; 34 C.F.R. § 562 and 34. C.F.R. §104.36. Because any alleged procedural deficiency had no impact on the plaintiff's full and effective participation in the IEP process, and because the plaintiff does not allege any harm from this, this court can find no violation of the plaintiff's due process rights which warrants relief. *See Doe v. Alabama State Board of Education*, 915 F.2d 651, 661 (11th Cir. 1990).

Therefore, this Court is unable to ascertain any genuine issue of material facts or any error in the hearing officers decision regarding the defendant evaluating the child in a timely fashion. The plaintiff has provided no response to the defendants' motions. Even drawing all justifiable inferences in favor of the plaintiff, the record as a whole cannot lead a rational trier of fact to find for the non-moving party. *See Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992); *Matsushita*, 475 U.S. at 587. The Court therefore **GRANTS** the defendant's motion for summary judgment on this issue.

Due to a complete lack of evidence, this Court must also grant the defendants' motion for summary judgment with regard to its counterclaim. As such, the Court therefore **GRANTS** the same, and **REVERSES** the decision of the hearing officer that the plaintiffs should have received a copy of the test protocols. This court finds that the defendant's provision of the contents of the child's file and test results, in the manner the defendant offered to provide the same, provides plaintiffs with procedural due process.

The plaintiff's request for attorney fees is hereby **DENIED**.

**DONE** and **ORDERED** this the ___16___ day of March, 1999.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE